IN THE UNITED STATE1S COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BIOMERIDIAN INTERNATIONAL, INC., a Utah Corporation<br><br>Plaintiff,<br><br>vs.<br><br>JAMES HOYT CLARK, an individual, WILLIS H. CLARK, an individual; and STAR TECH HEALTH SERVICE, LLC, a Utah business entity,<br><br>Defendants, | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:00-CV-945-B |

Before the Court is Plaintiff's Motion for Partial Summary Judgment of Unenforceability of U.S. Patent No. 6,142,927 ('927). The Court held a hearing covering this motion on Friday December 2, 2008. Biomeridian International Inc. (Biomeridian) was represented by Todd E. Zenger; James Hoyt Clark, Willis H. Clark, and Star Tech (Defendants) were represented by Denver C. Snuffer and Daniel B. Garriott. After oral argument, the Court requested additional briefing on the materiality of the differences between U.S. Patent No. 5,626,617 (Brewitt), which was disclosed to the USPTO, and the LISTEN Step-by-Step Manual (LISTEN Manual), which was not. After the parties submitted the additional briefing, the plaintiffs also filed a Motion in

Limine requesting a continued hearing on their original Motion for Summary Judgment. After review and consideration of the briefs submitted by the parties and the oral arguments presented by counsel, the Court enters the following Memorandum Decision and Order.

**I. Factual Background**

This case appears to arise from the parties' failure to work together in the narrow field of "computerized electrodermal screening" (CEDS) after their companies merged in October, 1997. After collaborating for only five months, the business relationship between defendants James Hoyt Clark, Willis H. Clark, and the newly formed Biomeridian entity ended. In April 1998, James Hoyt Clark and Willis H. Clark formed Star Tech Health, LLC, to further their work in the field of CEDS. Shortly thereafter, on September 14, 1998, James Hoyt Clark applied for a patent claiming a new type of CEDS device.

On November 7, 2000, U.S. Patent No. 6,142,927 ('927) issued, covering a "method and apparatus for applying low energy, non-ionizing, nonthermal, electromagnetic radiation or electric current to the body of a subject for therapeutic and health promoting purposes." '927 Patent, Memorandum in Support, Dkt. 136, ex. 1, Abstract. Less than one month later, BioMeridian initiated this suit alleging, among a variety of other claims, that the '927 patent is unenforceable because of inequitable conduct by James Hoyt Clark or his patent attorney during the prosecution of the '927 patent.

Now, after four reexamination proceedings before the PTO, during which several of the '927's claims were rejected and/or amended, plaintiffs have filed for summary judgment of unenforceability based upon James Hoyt Clark's failure to disclose material information during

the original prosecution of the ‘927 patent. Specifically, plaintiffs claim that Clark’s failure to disclose the LISTEN manual (a user’s manual detailing the operation of another CEDS device developed by Clark), Clark’s failure to disclose sales of the LISTEN manual during the period of 1992-1998, and Clark’s failure to disclose the fact that the LISTEN system contained an antenna-like device allow this Court to find the ‘927 patent unenforceable at the summary judgment stage.

**II. Discussion**

“A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution.” *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007) (citing *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006)). The two-step inequitable conduct analysis comprises “first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant’s conduct is so culpable that the patent should be held unenforceable.” *Ferring B.V. v. Barr Laboratories*, 437 F.3d 1181, 1186 (Fed. Cir. 2006). Procedurally, “[t]he party asserting inequitable conduct must prove a threshold level of materiality and intent by clear and convincing evidence,” after which “[t]he court must then determine whether the questioned conduct amounts to inequitable conduct by balancing the levels of materiality and intent.” *Id.*

The materiality of the withheld information is judged by the “reasonable examiner”

standard, *McKesson*, at 913, while the intent element is "in the main proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred," *id.* (citing *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1385 (Fed. Cir. 1998)). Importantly, the "involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Id.* (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)).

As plaintiffs readily concede, inequitable conduct is rarely determined on summary judgment. *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1184 (Fed. Cir. 1993). The Federal Circuit has cautioned against finding issues involving the patent holder's intent–such as inequitable conduct–on summary judgment. *See, e.g., Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1574 (Fed. Cir. 1985) ("Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use."); *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976) ("[S]ummary judgment is ordinarily inappropriate for disposition of patent cases in which issues of fact predominate. . . . The impropriety of summary judgment in the instant case is compounded for the reason that forfeiture of the patent is sought on the basis of the patentee's personal misconduct in procuring the patent . . . .").

Nevertheless, summary judgment on the issue of inequitable conduct is proper in certain cases. Plaintiffs point to two cases, *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182 (Fed. Cir. 1993) and *Ferring B.V. v. Barr Laboratories*, 437 F.3d 1181 (Fed.

Cir. 2006), in which the Federal Circuit upheld summary judgments of unenforceability for inequitable conduct. *Paragon* and *Ferring*–both of which involved patent applicants who submitted deceptive affidavits to the PTO–do not lay out general rules regarding when district courts must find inequitable conduct on summary judgment. *See, e.g.*, *Ferring*, 437 F.3d at 1191 ("We need not in this case attempt to lay down a general rule as to when intent may be or must be inferred from the withholding of material information by an applicant."). Rather, both courts emphasized that inequitable conduct is rarely resolved at the summary judgment stage, *see id.* at 1187; *Paragon*, 437 F.2d at 1190, but nevertheless affirmed each district court's grant of summary judgment based upon a complete weighing of all of the facts and circumstances.

In the present case, plaintiffs identify three acts by the defendants which they believe amount to clear and convincing evidence of inequitable conduct: (1) Clark's failure to disclose the LISTEN Manual, (2) Clark's failure to disclose sales of the LISTEN Manual during the period of 1992-1998, and (3) Clark's failure to disclose the fact that the LISTEN system contained an antenna-like device. Though each may serve helpful to the plaintiffs at a later stage, taken together, they do not amount to clear and convincing evidence of inequitable conduct for the purposes of the present motion.

First, plaintiffs argue that the non-disclosed LISTEN Manual was clearly material because the uncontested facts show that four separate examiners have found one or more claims of the '927 patent invalid based upon the Manual. The materiality of the LISTEN Manual, however, is tempered by the fact that the LISTEN system was disclosed in the Brewitt patent which was before the PTO. Undoubtedly, plaintiffs have met their burden of proving a threshold

level of materiality. However, because the LISTEN Manual is cumulative to the extent it was already disclosed in the Brewitt patent, and because the supplemental briefing demonstrates that the size of the overlap between Brewitt and the LISTEN Manual is substantial, the materiality that remains is not strong enough to allow the Court to decide as a matter of law that Clark had a clear and convincing intent to deceive the PTO.

Second, plaintiffs argue that Clark knowingly withheld his knowledge of sales of the LISTEN Manual during the prosecution of the ‘927 patent. Defendants maintain that the fundamental differences between the LISTEN system (which defendants claim is primarily a diagnostic CEDS device) and the ‘927 device (which defendants hold out to be primarily a therapeutic CEDS device) render the LISTEN system sales immaterial, and demonstrate that Clark’s non-disclosure of them was not with any intent to deceive. Though these questions may present a closer question during a later stage of this lawsuit, for the purposes of this motion for summary judgment, evidence regarding the sales of an allegedly completely different system is not enough for the Court to determine that Clark was sufficiently culpable to deem the ‘927 patent unenforceable.

Finally, plaintiffs argue that Clark’s representations regarding the LISTEN system’s lack of an antenna during the reexamination proceedings presents a further ground for a finding of unenforceability. Specifically, Clark first submitted an affidavit claiming that “[t]he LISTEN System did not contain a radio frequency transmitter or any other output hardware,” Plaintiff’s Memorandum in Support, Dkt. 136, ex. 9., at 3, and later submitted that “the LISTEN System included a simple antenna attached to its circuit board,” *id.*, ex. 18, at 4-5. Much of the confusion

stems from the simple fact that every wire emits a certain level of electromagnetic radiation when current passes through it. Defendant's use of the word "antenna" to both describe the LISTEN system's primitive antenna and the '927 patent's radio frequency transmitter is certainly confusing. Given the reasonable explanation offered by the defendants–and the clear differences between the LISTEN System's "antenna" and a radio frequency transmitter-type output device–this confusion cannot be said to amount to clear and convincing evidence of inequitable conduct as a matter of law.

In sum, based upon a weighing of all of the facts and circumstances, the Court finds that the plaintiffs have not established, in a clear and convincing manner, that as a matter of law Clark's actions before the PTO rise to a sufficient level of culpability to hold the '927 patent unenforceable. Accordingly, plaintiff's Motion for Partial Summary Judgment of Unenforceability of U.S. Patent No. 6,142,927 is DENIED. Plaintiff's Request for Continued Hearing on Motion for Partial Summary Judgment is also DENIED.

**IT IS SO ORDERED**

DATED this 5th day of February, 2009.

Dee Benson
United States District Judge